[☞ The Reporter is indebted to the Chief Justice, for the following opinion given by him at his Chambers, on the 20th of August, 1835.]

### THE STATE v. THE SHERIFF OF MIDDLESEX.

Where a court has jurisdiction of the subject matter, and hears and determines the same, the party aggrieved, must seek redress, not upon *habeas corpus*, before a Judge at chambers, but on *certiorari*, or in some other form of proceeding. Such a decision, being an exercise of jurisdiction, is binding, and must remain in full force, until regularly reversed by a superior court, having authority to do so.

Upon application in behalf of John Outcalt, who, it was alleged, was unlawfully detained in custody, by the Sheriff of the county of Middlesex, as a prisoner, for debt, (which application was accompanied by a petition in writing, signed by Outcalt, stating the circumstances under which he was imprisoned, and verified by his affidavit,) a writ of *habeas corpus ad subjiciendum*, was allowed by the Chief Justice, returnable before himself, at chambers, directed to the Sheriff of the county of Middlesex.

By the Sheriff's return to that writ it appeared, that in December 1834, he arrested the defendant Outcalt, on a writ of *capias ad satisfaciendum*, out of the Supreme Court, at the suit of John H. Disborough : that at the December term of the Court of Common Pleas of Middlesex county, Outcalt made application to that court, for the benefit of the insolvent laws of this State. On the hearing of that application, Disborough being dissatisfied, the defendant was remanded by the court. Issue being afterwards joined between the parties, in the manner prescribed by the statute, *Rev. Laws*, 218, *Section* 7, the cause was tried at the March term, of the said court, when the jury found a verdict against the debtor, and judgment was thereupon rendered, as by the statute in such cases, is directed. Afterwards, and while the defendant was still in custody for the cause aforesaid, he made a second application for the benefit of the insolvent laws, and such proceedings were thereupon had, that on the 6th day of August, instant, the Court of Common Pleas of Middlesex county, discharged him as an insolvent debtor, from imprisonment on account of any debts by him previously

contracted. But the Sheriff being advised by counsel, that the discharge so granted by the court, was wholly illegal and void, he detained the said John Outcalt in his custody on the execution aforesaid, and still detains him for the same cause.

*Blauvelt* and *E. Wood*, for the prisoner.

*Nevius,* for the creditor.

The counsel for the prisoner, to show that this was the proper remedy, cited *The State* v. *Ward,* 3 *Halst. R.* 121 ; *The State* v. *Cheeseman,* 2 *South. R.* 445 ; *and Randolph's* case, 9 *Peters. U. S. R.* 16, *in note.*

To show that the judgment, of a court of competent jurisdiction, is binding until reversed, he cited *Watkin's case,* 3 *Peters. U. S. R.* 203 ; *Randolph's case* 9 *id.* 13 ; and on the question whether the Court of Common Pleas in reference to cases of insolvency, was to be considered as a court of general or of limited and particular jurisdiction, he referred to the cases of *Randolph,* 9 *Peters. U. S. R*; 10 *Co.* 73 ; *Watkin's case,* 3 *Peters. U. S. R.* 193 ; *Kempe.* vs. *Kennedy,* 5 *Cranch,* 173 ; *U. S.* vs. *Arredondo,* 6 *Peters. U. S. R.* 709.

The counsel for the  ·creditor, cited *Griffith* v. *Frazier,* 8 *Cranch* 9 ; 5 *Mass. R.* 67 ; 7 *id.* 399.

Opinion of Chief Justice HORNBLOWER.

In the opinion delivered by me, in the case of *Peltier,* 2 *Green's R.* 312, it was stated as a general principle, that a writ of *habeas corpus,* is not the proper remedy to effect the liberation of a defendant, out of custody, where the arrest and detention is on *civil process* out of a court of competent jurisdiction. But although the prisoner in this case, was arrested and is detained, on civil process, out of a competent court, yet the facts upon which this writ of *habeas corpus* was allowed, if true, constitute a case, not within that decision. The regularity of the writ, under which Outcalt was arrested, the competency of the court out of which it issued, and the propriety of his detention under that process, in itself considered, are not questioned. But it is alleged, that the Sheriff, in direct disobedience, if not in contempt, of an express order of the court having competent authority to discharge the prisoner from that arrest, detains him in custody. If such be the fact, it is one of

---

The State *v.* Sheriff of Middlesex.

---

the very cases mentioned in 2 *Green's R.* 312, as possibly forming an exception to the general rule there laid down.

It becomes then my duty to enquire, whether the court of Common Pleas had jurisdiction in the matter; not whether they have exercised that jurisdiction in a proper and legal manner; whether they have done so or not, must be determined on *certiorari*, or in some other form of proceeding. I can no more decide that question, upon this *habeas corpus*, than I can enquire into the legality of the judgment of the Supreme Court, under the authority of which, the prisoner was arrested on *ca. sa.* My decision in this matter, must depend upon the question, whether the proceeding and order of the Court of Common Pleas of the 6th of August, instant, whereby Outcalt was discharged as an Insolvent Debtor, was absolutely *void*, or only *voidable?* If *void*, the prisoner must be remanded—but if, only *erroneous* and *voidable*, he must be liberated. *Randolph's case*, 9 *Peters' U. S. R.* 12 *&c. in n.* But whether *void*, or *voidable*, does not depend upon the question, whether an insolvent debtor having made one attempt to obtain the benefit of the act, and failed in the attempt, either by the decision of the court, or the verdict of the jury, can make a second application, and be lawfully discharged? This is a grave, and I believe an undecided question. In the case of *Sooy* v. *McKean et. al.* 4 *Halst. R.* 86, this court decided, that an insolvent against whom there had been a verdict and judgment under the statute, could not be heard on a second application, until he had paid the costs of the former trial; but the court took care to say, that they wished to be considered as expressing no opinion, whether a debtor, after such verdict and judgment, could institute new proceedings, or whether the court were bound to entertain a second application, even if the costs of the former trial were paid. Whether such second application can be successfully made, is then, an enquiry that involves the construction of the statute, in a very important particular. It is not, therefore, a question of jurisdiction; for the power to hear and determine a cause, *is* jurisdiction. It is *coram judice*, whenever a case is presented, which brings the power into action. *U. States* v. *Arredondo*, 6 *Peters' U. S. R.* 709. Now the Court of Common Pleas has jurisdiction to hear

and determine *all* applications for the benefit of the insolvent laws. They had, then, a right to hear and determine the application of the prisoner. Whether he was *such* a prisoner, as had a right to apply, or whether under the peculiar circumstances of his case, he was entitled to be discharged as an insolvent debtor, were questions of law, proper for that court to determine, and which, in the first instance, could only be decided there. That decision may be right, or it may be wrong; and from it, there is, no doubt, an appeal, in some form or other; but certainly, not to a judge at chambers, on a hearing upon *habeas corpus.* It is therefore in vain to urge the illegality of the discharge, on the ground of its being a second application, by the same party, under the same imprisonment. Whatever may be my opinion on that point, (and I certainly mean to express none at this time,) it cannot influence my decision on the question before me. A *void* judgment, is undoubtedly in a broad sense of the term, an erroneous one. But a judgment may be manifestly erroneous, and yet not a void one. *Kempe* v. *Kennedy,* 5 *Cranch,* 173. To determine whether the prisoner was entitled to be heard, and to be discharged as an insolvent debtor, or not, was one of the most unquestionable of the powers and duties of the Court of Common Pleas. The decision of that matter, was the exercise of jurisdiction, and whether their judgment was for or against the prisoner, it was equally binding, and must remain in full force, until regularly reversed by a Superior Court, having authority to do so. *Watkins' case,* 3 *Peters' U. S. R.* 203; 10 *Co.* 76. I do not mean to say that a court having a general jurisdiction upon any given subject, may not do a void act, or render a void judgment upon any matter within the general scope of that jurisdiction; and though the difficulty, as Chief Justice MARSHALL remarks, in *Griffith* v. *Frazier,* 8 *Cranch,* 25, of distinguishing those cases in which a court may be said to have acted without authority, on a matter of general cognizance, may be perceived and felt, yet the difficulty of marking the precise line of distinction, does not prove that none exists. The distinction, however, is clearly illustrated by the court, in that case. To give the Common Pleas jurisdiction in a matter of insolvency, there must be a case presented to them, in which

they may lawfully receive and entertain an application for a discharge. To make such a case, the applicant must be a prisoner for debt, or have been arrested upon mesne or final process in a civil suit. Hence the court, incidentally at least, must enquire and determine, whether the applicant is in those circumstances ; and thus far, it is in the exercise of its proper and ordinary jurisdiction upon that subject. Yet if the court decides, that the applicant is such prisoner, or under such arrest, when in truth and in fact he is in neither of those predicaments, it will not make him so, and consequently any subsequent proceeding founded upon that false assumption, might be considered, as respects that particular case, *coram non judice*, and therefore void. But be this as it may, the argument of the counsel against the prisoner, drawn from the reasoning of the court in *Griffith* v. *Frazier*, can have no application to this case. Outcalt was a prisoner for debt. Whether indeed he was entitled to his discharge as an insolvent debtor, was a question of law, which the court were bound to decide ; and their decision, as before remarked, must stand, until reversed by competent authority. The argument of counsel, that Outcalt was in confinement, when he presented his second petition, under the judgment of the court, rendered on the verdict of the jury, and not on an execution, was more ingenious than solid. His imprisonment on the *ca. sa.* never ceased. The judgment is not that he should *be committed*, but that he should be " *continued in custody until he be* thence delivered by due course of law ;" *R. L.* 220, *Section* 7. Nor is there any force in the argument, at least so far as respects the question now before me, that the judgment rendered on the verdict of the jury, has never been reversed ; that it remains in full force, and is conclusive on the rights of the parties, that by *it*, the plaintiff in execution, is entitled to his common law remedy against the body of the defendant, for the satisfaction of his debt ; that the Sheriff is therefore bound to retain him in custody, until such satisfaction is made, notwithstanding any subsequent discharge by the court ; and, that by the last decision, the Court of Common Pleas have undertaken to reverse their own judgment, and consequently, such last decision is a nullity, as the court have

no such authority.   The effect of these arguments, whatever may be their just weight, when urged before a proper tribunal, is only to bring us back, on this hearing, to the question of construction, a question, as I have already shown, proper, and in the first instance exclusively, for the consideration of the court.

The same answer must be given to so much of the argument as was intended to show, that the Court of Common Pleas in relation to this subject, is a court of limited power and special jurisdiction : and that, having heard the defendant's cause, and proceeded to judgment, their jurisdiction was at an end, so far as concerns his case.   Whether the principles referred to, by Mr. Justice BARBOUR in *Randolph's case*, 9 *Peters. U. S. R.* 14, *in note*, which was cited on this point, are applicable to the Court of Common Pleas, in respect to their jurisdiction on this subject, is a proper question for the consideration of that court, in the first instance, and of the Supreme Court upon a review of their decision, on *certiorari*.   But I cannot, on this hearing, undertake to treat the subsequent proceedings of the Common Pleas, as a nullity, upon that ground.

Upon the whole, I am of opinion, the prisoner ought to be discharged out of custody at the suit of Disborough on the *ca. sa.* mentioned in the Sheriff's return ; and shall make an order accordingly.

CITED in *Race* v. *Bird et al.,* 4 *Zab.* 40.